IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. __5:21-cv-251_____

| | |
|---|---|
| BERINGER COMMERCE, INC. d/b/a BLUE ACORN iCi,<br><br>Plaintiff,<br><br>v.<br><br>FIN CAP, INC. d/b/a "BLUEACORN.CO," BLUE ACORN PPP, LLC, BLUE OAK FOREST, LLC, MICHAEL S. COTA, JAMES FLORES, STEPHANIE HOCKRIDGE REIS, and NATHAN REIS,<br><br>Defendants. | **VERIFIED COMPLAINT**<br>*(Jury Trial Demanded)* |

NOW COMES Plaintiff BERINGER COMMERCE, INC. d/b/a BLUE ACORN iCi—an Infosys Company, by and through undersigned counsel, and files this Verified Complaint against Defendants BLUEACORN.CO, FIN CAP, INC., BLUE ACORN PPP, LLC, BLUE OAK FOREST, LLC, MICHAEL S. COTA, JAMES FLORES, STEPHANIE HOCKRIDGE REIS and NATHAN REIS ("Defendants") as follows:

## INTRODUCTION

This is a trademark infringement, copyright infringement, cybersquatting, and unfair competition action brought by Plaintiff Blue Acorn iCi against numerous individuals and corporate entities who are operating an infringing "Blue Acorn" business using unregistered logos, marks, and images that are nearly identical and confusingly similar to Plaintiff's 1) registered trademark BLUE ACORN ICI; 2) copyright of the "Blue Acorn" logo artwork; and 3) all associated

intellectual property rights relating to Plaintiff's "blue acorn" brand, which has been in use in the marketplace since 2007 in connection with Plaintiff's goods and services.

In 2020, Defendants established a business purporting to assist small businesses and contractors to obtain loans through the federal Paycheck Protection Act. Defendants registered multiple websites and initiated a widespread marketing campaign using Plaintiff's "blue acorn" name and identical copy of Plaintiff's acorn logo to promote their business.

In March 2021, Defendants flooded the market with their infringing "Blue Acorn" mark and in similar channels of commerce as Plaintiff's goods and services, causing significant, actual consumer confusion in the marketplace. In fact, Plaintiff has been inundated with calls, complaints, emails, messages, and investigative inquiries relating to Defendants' business based on consumers' mistaken belief that Plaintiff is associated with, or providing, Defendants' business. In addition, Defendants' failure to provide any semblance of customer service, coupled with the serious nature of customer complaints (such as fraud and misdirection of loan funds) are damaging the goodwill and value associated with Plaintiff's "blue acorn" brand.

In an attempt to address these serious issues of infringement, unfair competition, and actual consumer confusion, Plaintiff sent two cease & desist letters outlining Defendants' blatant infringement and resulting losses to Plaintiff, including significant business interruption and tarnishing of Plaintiff's "blue acorn" brand and associated goodwill. Unfortunately, Defendants have continued their unauthorized use and promotion of infringing marks in the face of Plaintiff's superior intellectual property rights, full knowledge of actual consumer confusion, and serious harms to Plaintiff, further demonstrating that Defendants' conduct is done willfully and with the deliberate intent to trade on the goodwill of Plaintiff's intellectual property rights.

Escalating consumer confusion, together with Defendants' failure and refusal to cure their conduct following Plaintiff's cease & desist letters, have forced Plaintiff to file this action, seeking damages and injunctive relief for Defendants' intentional trademark infringement, copyright infringement, cybersquatting, and unfair competition.

## PARTIES

1.      Plaintiff BERINGER COMMERCE, INC. d/b/a BLUE ACORN iCi ("Plaintiff" or "Blue Acorn iCi") is a corporation organized and existing under the laws of the State of Delaware and is authorized to conduct business in the state of North Carolina, and does conduct business at 4000 Westchase Blvd #280, Raleigh, North Carolina 27607. Blue Acorn iCi is a subsidiary of Infosys Nova Holdings, LLC, which is a wholly owned subsidiary of Infosys Limited ("Infosys").

2.      Defendant FIN CAP, INC. d/b/a "BLUEACORN.CO" ("Fin Cap") is a corporation organized and existing under the laws of the State of Wyoming with a registered place of business located at 5830 East 2nd Street, Suite 7000 #2435, Casper, Wyoming 82609 and a principal place of business located at 7014 East Camelback Road, Suite 1452, Scottsdale, Arizona 85251.

3.      Defendant BLUE ACORN PPP, LLC ("Blue Acorn PPP") is a limited liability company organized and existing under the laws of the State of Arizona with a registered address located at 1525 Kierland Blvd., Suite 200, Scottsdale, Arizona 85254 and a principal place of business located at 7014 East Camelback Road, Suite 1452, Scottsdale, Arizona 85251.

4.      Defendant BLUE OAK FOREST, LLC ("Blue Oak") is a limited liability company organized and existing under the laws of the State of Delaware with a registered address located at 19 Kris Court, Newark, Delaware 19702 and a principal place of business located at 7014 East Camelback Road, Suite 1452, Scottsdale, Arizona 85251.

5.     Defendant MICHAEL S. COTA ("Cota") is an individual citizen and resident of the State of Arizona, residing at 2138 South Valle Verde Circle, Mesa, Arizona 85209.

6.     Defendant JAMES FLORES ("Flores") is an individual citizen and resident of the State of Arizona, residing at 7833 East Harvard Street, Scottsdale, Arizona 85257.

7.     Defendant STEPHANIE HOCKRIDGE REIS ("S. Reis") is an individual citizen and resident of the State of Arizona, residing at 4747 North Scottsdale Road, C1003, Scottsdale, Arizona 85251.

8.     Defendant NATHAN REIS ("N. Reis") is an individual citizen and resident of the State of Arizona, residing at 4747 North Scottsdale Road, C1003, Scottsdale, Arizona 85251.

9.     Upon information and belief, Cota, Flores, S. Reis, and N. Reis (collectively "Individual Defendants") established Fin Cap, Blue Acorn PPP, and Blue Oak (collectively "Entity Defendants"), and are controlling, directing, and authorizing the activities of the Entity Defendants as outlined in this Verified Complaint.

## JURISDICTION & VENUE

10.     This Court has original federal subject matter jurisdiction pursuant to 15 U.S.C. §§ 1114, 1121, and 1125, *et. seq.*, 17 U.S.C. § 101, *et seq.*, and 28 U.S.C. §§ 1331 and 1338.

11.     This Court has supplemental jurisdiction over the pendant state law claims pled in this Verified Complaint pursuant to 28 U.S.C. § 1367 since the state law claims are integrally interrelated with the federal claims and arise from a common nucleus of operative fact.

12.     As such, the administration of the state claims with the federal claims further the interests of judicial economy in accordance with 28 U.S.C. § 1367.

13.     A substantial part of the events giving rise to this action, as more fully described below, occurred in the Eastern District of North Carolina. As such, venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

### BLUE ACORN iCi

14.     Plaintiff Blue Acorn iCi is a leading digital technology consulting company that uses analytics, digital commerce, e-commerce, customer experience, and Experience Driven Commerce (XDC) to assist businesses with planning and developing online digital consumer experiences for its clients.

15.     Blue Acorn iCi also offers payment processing services (processing payments for e-commerce sales).

16.     Blue Acorn iCi offers these services through its website, located at https://www.blueacornici.com/ and other internet channels of commerce and has developed a distinct, identifiable, and recognized "Blue Acorn" brand to identify its unique services.

17.     Blue Acorn iCi provides services to over 169 clients throughout the United States and generates approximately 64 million dollars in annual revenue.

18.     Blue Acorn iCi expends approximately $630,000.00 annually toward the promotion and development of its "Blue Acorn" brand and associated services, including marketing its services through its websites, the earliest of which was established over fifteen (15) years ago.

19.     Specifically, the domain names "blueacorn.com" (created on January 1, 2004) and "blueacornici.com" (created on August 23, 2018) are actively maintained by Plaintiff to promote its business and are owned by Blue Acorn iCi.

20.     Blue Acorn iCi's business operations relating to the intellectual property at issue in this action, including all monetary losses, business interruption, and actual consumer confusion, have occurred and continue to occur in North Carolina.

21.     Blue Acorn iCi's business and intellectual property rights to the "Blue Acorn" brand were initially established by Plaintiff's predecessors in interest, including Blue Acorn, Inc.—a corporation formerly organized and existing under the laws of the State of South Carolina; Blue Acorn, LLC—a corporation organized and existing under the laws of the State of Delaware; Blue Acorn E-Commerce, Inc.—a corporation organized and existing under the laws of the State of Delaware; and iCiDIGITAL, LLC—a corporation organized and existing under the laws of the State of Delaware (collectively "Predecessors").

22.     All intellectual property interests of such Predecessors in the "Blue Acorn" brand, including all ownership rights, rights of enforcement relating to such intellectual property interests, and Plaintiff's IP (as defined below), have been irrevocably transferred, assigned, and conveyed to Plaintiff. True and accurate copies of these transactions are attached as **Exhibit A** and are incorporated as if fully stated in this Verified Complaint.

23.     In October 2020, Blue Acorn iCi was acquired by Infosys Nova Holdings, LLC—a wholly owned subsidiary of Infosys. However, Blue Acorn iCi has retained ownership and enforcement rights relating to the "Blue Acorn" intellectual property at issue in this lawsuit.

24.     As such, Plaintiff has the sole and exclusive legal, contractual, and statutory right to bring this action to enforce its intellectual property rights and enjoin Defendants' trademark infringement, copyright infringement, and unfair competition.

25.     The "Blue Acorn" brand built by Blue Acorn iCi has been promoted in public channels of trade since 2007 ("Blue Acorn Brand"). True and accurate copies of marketing materials depicting the Blue Acorn Brand from 2007 to the present are attached as **Exhibit B**.

26.     The Blue Acorn Brand has been continuously used by Plaintiff for over fourteen (14) years to promote its business. The following representative excerpts from the materials contained in **Exhibit B** demonstrate the consistent use and evolution of the Blue Acorn Brand over the years:

**Blue Acorn Brand 2007 - 2009**



**Blue Acorn Brand 2009 - 2015**



**Blue Acorn Brand 2015 – Present**







**Blue Acorn Brand 2019 - Present**







*See* **Exhibit B**.

27.    While the Blue Acorn Brand has undergone minor stylistic modifications and modernization throughout the years, the core and distinctive elements of the mark—the left-tilted

acorn, the font style and capitalization, the typeface contrast between the words "blue" and "acorn," and the unvaried use of the color blue—have remained the same.

28.     Plaintiff is the sole owner, developer, and lawful user of the Blue Acorn Brand, which has been continuously and exclusively used, promoted, and developed by Plaintiff and its Predecessors since 2007 in connection with Plaintiff's services.

29.     Plaintiff's longstanding, original, and prior use and development of the Blue Acorn Brand confers protectable and superior intellectual property rights in and to the Blue Acorn Brand under federal and state law, including the common laws of North Carolina.

### PLAINTIFF'S BLUE ACORN ICI TRADEMARK

30.     In addition to the Blue Acorn Brand, Plaintiff is also the sole owner of valid and subsisting United States Registration No. 6,272,484 on the Principal Register for the word mark "BLUE ACORN ICI" ("BLUE ACORN ICI Mark"). A true and accurate printout of the registration certificate issued for the BLUE ACORN ICI Mark, including a list of the goods and services covered, is contained in the materials attached as **Exhibit C** and is incorporated as if fully stated in this Verified Complaint.

31.     Blue Acorn iCi's trademark registration for BLUE ACORN ICI covers, *inter alia*, "[a]ssistance, advisory services and consultancy with regard to business planning [and] business management." *See* **Exhibit C**.

32.     The BLUE ACORN ICI Mark is a valid, subsisting, unrevoked, and uncancelled trademark under federal and state law, including the common laws of North Carolina.

33.     On July 16, 2020, Plaintiff filed a trademark application with the United States Patent and Trademark Office (USPTO) for the BLUE ACORN ICI Mark. A true and accurate

printout of the USPTO wrapper is contained in the materials attached as **Exhibit C** and is incorporated as if fully stated in this Verified Complaint.

34. The USPTO serial number for the application is 90/057,631.

35. The owner-applicant is Plaintiff.

36. There was no opposition to registration of the BLUE ACORN ICI Mark.

37. Accordingly, the BLUE ACORN ICI Mark was registered by the USPTO on February 16, 2021 under registration number 6,272,484.

**PLAINTIFF'S BLUE ACORN LOGO**

38. One of Plaintiff's Predecessors, Blue Acorn E-Commerce, Inc., independently created the following blue acorn image or artwork ("Acorn Logo") in connection with the Blue Acorn Brand.



39. Since 2009, the Acorn Logo has remained substantially unchanged and has been continuously and exclusively used, promoted, and developed by Plaintiff and its Predecessors in connection with Plaintiff's services.

40. The Acorn Logo was not copied from any other work, but was designed and drawn by Plaintiff, through its Predecessors.

41. Pursuant to an assignment contained in the attached **Exhibit A**, Blue Acorn, LLC assigned and conveyed all right and title to the Acorn Logo to Plaintiff.

42.     The Acorn Logo is wholly original, and Plaintiff is the exclusive owner of all right, title, and interest, including all rights under copyright, in the Acorn Logo.

43.     On May 7, 2021, Plaintiff delivered the deposit, application, and fee required for copyright registration of the Acorn Logo with the United States Copyright Office ("USCO") in the proper form. On May 11, 2021, the USCO made a first refusal of the application. True and accurate copies of these documents are contained in the materials attached as **Exhibit C** and are incorporated as if fully stated in this Verified Complaint.

44.     Contemporaneously with this Verified Complaint, Plaintiff filed a Request for Reconsideration and a Notice of Litigation along with a copy of this Verified Complaint, which is now pending before the USCO. True and accurate copies of these documents are contained in the materials attached as **Exhibit C** and are incorporated as if fully stated in this Verified Complaint.

45.     Plaintiff believes the Request for Reconsideration will be granted and will result in registration of its copyright for the Acorn Logo.

46.     As such, Plaintiff is the owner of valid and subsisting copyright for the Acorn Logo.

47.     Plaintiff's copyright, as well as the longstanding, original, and prior use and development of the Acorn Logo, confers protectable and superior intellectual property rights in and to the Acorn Logo under federal and state law, including the common laws of North Carolina.

### PLAINTIFF'S BRAND VALUE AND GOODWILL

48.     Since 2007, Plaintiff has established a valuable reputation and goodwill in its Blue Acorn Brand, BLUE ACORN ICI Mark, and Acorn Logo (collectively, "Plaintiff's IP").

49.     As further demonstrated by **Exhibits A through C**, Plaintiff has invested significant time, effort, and financial resources developing and marketing Plaintiff's IP to identify and promote its business and goodwill among businesses and consumers.

50.     Plaintiff's IP is distinctive to the consuming public and Plaintiff's trade.

51.     Since 2007, Plaintiff has promoted and sold its web-based services to the public and has earned a reputation of providing high quality e-commerce and customer experience services, the delivery of promised results, and excellent customer service and response.

52.     As a result of Plaintiff's expenditures, efforts, and long-standing brand development, Plaintiff's IP has come to signify the high quality of Plaintiff's services and has acquired incalculable distinction, reputation, and goodwill belonging exclusively to Plaintiff. Documents evidencing Plaintiff's brand recognition and quality of services, including publications and awards, are attached collectively as **Exhibit D** and incorporated as if fully stated in this Verified Complaint.

53.     Plaintiff has not authorized any other person or entity to use, publish, reproduce, copy, or possess Plaintiff's IP.

### DEFENDANTS' BLUE ACORN BUSINESS

54.     On October 12, 2020, Defendant Fin Cap filed Articles of Incorporation with the Wyoming Secretary of State. A true and accurate printout of the Articles of Incorporation is contained in the attached **Exhibit E**, which is incorporated as if fully stated in this Verified Complaint.

55.     On March 24, 2021, Defendant Fin Cap registered the trade name "Blueacorn.co" with the Wyoming Secretary of State. A true and accurate printout of the trade name application is contained in the attached **Exhibit E**.

56.     Fin Cap identified the business of "blueacorn.co" as "software."

57.     Despite the March 2021 registration of "Blueacorn.co" in Wyoming, publicly available records indicate that one or more Defendants began operated a web-based business under the trade name and through the domain "blueacorn.co" as early as May 2020.

58.     Specifically, Defendants' "Blue Acorn" business purports to assist businesses, independent contractors, and self-employed individuals in applying for funds through the federal Paycheck Protection Program ("PPP") through the use of online digital services.

59.     Upon information and belief, Defendants are obtaining bank account information from consumers and are directing and/or assisting in the navigation of federal PPP funds to private bank accounts.

60.     In and around March 2021, Defendants web-based business expanded to operations using the trade names "Blue Acorn," "Blue Acorn PPP," and "Blue PPP."

61.     On April 16, 2021, Defendant Blue Acorn PPP was also established by one or more Defendants to promote and operate the PPP business in connection with "blueacorn.co" and the trade names referenced in the previous paragraph. A true and accurate copy of Blue Acorn PPP's Articles of Incorporation is contained in the attached **Exhibit E**.

62.     Defendants are currently operating their PPP-related "Blue Acorn" business through several websites, including the following:

https://blueacorn.co/

https://blueppp.net/

https://blueppp.com/

https://ppp.businesswarrior.com/

https://getblueacorn.com/

https://howndppp.com/

63.     Each of these websites invite the customer to take a "quiz" to see if they are eligible for PPP funds and to "*find out how much you can get*."

64.     The quiz then asks the customer several questions about their earnings and then requires an email address to proceed. Ultimately, customers are directed to Defendants for further solicitation and sale of their services.

65.     Upon information and belief, customers located in the state of North Carolina have taken the "quiz" located on Defendants' websites.

66.     In addition, Defendants have recently launched a widespread, nationwide advertising campaign to promote their PPP-related "Blue Acorn" business.

67.     Specifically, Defendants are advertising heavily on social media websites and other web-based platforms, such as Google, Tik Tok, LinkedIn, Facebook, and YouTube.

68.     Defendants' business, marketing, and advertising is targeted to individuals and entities nationwide, including customers and businesses located in North Carolina.

69.     Defendants are also advertising heavily on numerous media platforms such as radio, podcasts, and other marketing platforms to promote their business, through which Defendants have purchased and/or promoted advertising specifically targeted to customers in North Carolina.

70.     Despite Defendants' use of multiple trade names and the websites to market their new business, each of the trade names and websites identified in this Verified Complaint have one fundamental element in common—they all use the following name and logo ("Infringing Mark") to promote Defendants' PPP business:



71.    True and accurate printouts from Defendants' advertisements and websites showing Defendants' pervasive use of the Infringing Mark are attached collectively as **Exhibit G** and are incorporated as if fully stated in this Verified Complaint.

72.    At the time Defendants used the Infringing Mark in their marketing, which upon information and belief dates back to at least May 2020, Plaintiff's IP had already been in widespread use by Plaintiff since 2007.

73.    Side-by-side comparison shows that the Infringing Mark is unmistakably and nearly identical to Plaintiff's IP.

**Defendants' Infringing Mark**              **Plaintiff's Mark**

                          

74.    Both images depicted have the same use of blue coloring, the same font style, the same lack of capitalization, the same font contrast between the "blue" and the "acorn," and the same emphasis or bold typeface of the word "acorn."

75.    The striking similarity is not accidental or coincidental.

76.    Defendants' adoption and use of a logo that is confusingly similar to Plaintiff's IP is apparent and intentional.

77.    Defendants have used the confusingly similar logo in the state of North Carolina.

78.    Defendants' intentional infringement is further confirmed by Defendants' blatant use of ***an exact replica*** of Plaintiff's Acorn Logo to promote Defendants' PPP business.

79.    For example, the following video advertisement depicted in the screenshot below was posted by Defendants to YouTube.com, which was and is available and accessible in North Carolina, and is accessible at the following URL:

15



https://www.youtube.com/watch?v=G5WEOeqCH48 (*last accessed on June 7, 2021*).

80.     All hyperlinks embedded in the YouTube advertisement navigate the user to one of Defendants' numerous websites, through which Defendants market their PPP service.

81.     On closer inspection, Defendants' use of Plaintiff's Acorn Logo is unmistakable:



*See* **Exhibit G**.

82.     Side-by-side comparison of Plaintiff's Acorn Logo and Defendants' blue acorn logo confirms that the latter is an identical copy of the former:

**Plaintiff's Acorn Logo**          **Defendants' acorn logo**

          

*See* **Exhibit G**.

83.     At all times relevant to Defendants' use and publication of the replica blue acorn logo in their marketing, Plaintiff's Acorn Logo had already been in widespread use by Plaintiff since 2009.

84.     Given the striking similarity between Infringing Mark and Plaintiff's IP, as well as the confluence in the channels of trade by both parties which are rooted in web-based or internet services, the likelihood of immediate and ongoing consumer confusion is apparent.

**ACTUAL CONSUMER CONFUSION**

85.     Defendants' operation of the PPP-related "Blue Acorn" business, using the confusingly similar Infringing Mark and replica of Plaintiff's Acorn Logo, has in fact confused and deceived consumers into believing, mistakenly, that Defendants' PPP services originate from Plaintiff or are otherwise affiliated or authorized by Plaintiff.

86.     Specifically, and as a direct result of Defendants' infringement and copying of Plaintiff's IP in their recent media campaign, Blue Acorn iCi began receiving a large number of calls, website contacts, emails, social media communications, and mail intended for Defendants' PPP-related "Blue Acorn" business. True and accurate copies of communications received by Plaintiff, as well as Plaintiff's telephone logs and website activity, showing customer contacts

relating to Defendants' activities, are filed separately as Proposed Sealed **Exhibit F** and are incorporated as if fully stated in this Verified Complaint.[1]

87.     The majority of these communications are from irate customers who are deeply unhappy with the PPP services Defendants purport to provide.

88.     As further demonstrated in the materials filed as Proposed Sealed **Exhibit F** to this Verified Complaint, multiple residents of North Carolina are among Defendants' customers who have contracted for Defendants' services and have serious complaints about those services, which were provided in the state of North Carolina.

89.     While the initial number of misdirected communications was handled internally by Plaintiff, the volume and serious nature of the consumer complaints quickly escalated and have become entirely unmanageable.

90.     The number and volume of communications to Plaintiff's Raleigh, North Carolina office are overwhelming Plaintiff's employees throughout the day. *See* **Exhibit F**.

91.     Plaintiff's website contacts are also overwhelmed by Defendants' "Blue Acorn" PPP customers. For example, Plaintiff's website contains a "contact us" page allowing customers to send an electronic message to Plaintiff through the website. As of June 7, 2021, 451 of the total 519 contacts were related to Defendants' business—or an astounding 86.9% percent of the total contacts. *See* **Exhibit F**.

92.     In addition, Plaintiff's employees have been individually contacted by Defendants' customers through their own personal social media platforms, including direct messages sent

---

[1]Contemporaneously with the filing of this Verified Complaint, Plaintiff has sought leave to file Exhibits F, J, L, and N under seal to protect sensitive financial information of non-party consumers who submitted complaints about Defendants' business.

through Facebook, Twitter, and Instagram. To date a total of 134 social media engagements have been initiated by Defendants' customers.

93.     Unfortunately, due to Defendants' unauthorized use of Plaintiff's IP, these consumers believe Plaintiff Blue Acorn iCi is to blame for Defendants' activities.

94.     Plaintiff's ongoing receipt of consumer communications and complaints intended for Defendants constitute proof of actual confusion. *See* **Exhibit F**.

95.     Actual consumer confusion has increased at an alarmingly high rate due to the recent surge of online and multimedia marketing initiated by Defendants to promote their PPP business.

96.     For example, as of May 28, 2021, Defendants' YouTube video shown above had been viewed ***over 14 million times*** in a little over one month. **Exhibit G**.

97.     This staggering number of views of the YouTube advertisement, in which Defendants use an obvious copy of Plaintiff's Acorn Logo, will only continue to increase unless Defendants' infringement is enjoined.

98.     In addition, Defendants have invested heavily in online advertising to ensure that any search for a "blue acorn" business leads the searcher to one if its infringing websites.

99.     For example, a Google search for "blue acorn" produces one of Defendants' infringing websites (https://blueacorn.co) as the first result.



*Search conducted May 28, 2021.*

100.    The first and second results that follow are Plaintiff's website and then another of Defendants' infringing websites:



101.    Because Defendants' name and logo is confusingly similar to Plaintiff's IP, consumers easily mistake Plaintiff's website for that of Defendants and vice versa.

102.    This consumer confusion is causing significant, irreparable, and unmitigated harm to Plaintiff's IP, business, goodwill, and reputation in the marketplace.

103.    In addition to receiving direct complaints from consumers, an increasing number of complaints about Defendants have been posted on various social media platforms and submitted to consumer watchdog organizations and governmental agencies—all based on consumers' mistaken belief that Plaintiff Blue Acorn iCi is the provider of services related to Defendants' PPP business.

104.     True and accurate copies of these consumer complaints are attached collectively as

**Exhibit H** and are incorporated as if fully stated in this Verified Complaint.

105.     Again, consumers believe Blue Acorn iCi is to blame.

106.     By way of example, the following consumer complaint submitted to Plaintiff Blue

Acorn iCi referencing a complaint filed with the Better Business Bureau (BBB) demonstrates the

typical degree of customer dissatisfaction erroneously attributed to Blue Acorn iCi:

> *My name is [WITHHELD]. This correspondence is in regard to my PPP loan. My SBA loan number is [WITHHELD] and my number with [WITHHELD ACCOUNT NUMBER]. On April 7, 2021, your company attempted to deposit my PPP funds in my account which total [WITHHELD] dollars due to not having my complete account number. I have called the company over 25 times to give the company the correct banking account. I have emailed Blueacorn over 15 times in the last two weeks. I finally had to file a complaint with the Better Business Bureau and with the SBA because I cannot get in touch with anything to assist me. . . . I would just like to be contacted.*

**Exhibit F** (personal and financial information withheld subject to Plaintiff's Motion to Seal filed

contemporaneously with this Verified Complaint).

107.     As demonstrated by **Exhibits F and H**, which contain numerous communications

similar to the above, the harm associated with consumers' actual confusion about the source of

Defendants' goods and services is substantial and undeniable.

108.     Defendants' total lack of customer service and failure to deliver the product and

service they purport to provide amplifies the harm caused by this evident consumer confusion.

109.     Over the past few months, Plaintiff has expended significant time and resources in

an attempt to address this cascade of complaints and misdirected communications with consumers

directly by explaining that Blue Acorn iCi has no connection or association whatsoever with

Defendants' "Blue Acorn" PPP business that is the source of consumers' ire and dissatisfaction.

110.     Attempting to address these communications and complaints directly with consumers is extremely costly, time-consuming, and burdensome for Plaintiff. These events have also led to significant interruption in Plaintiff's business, and ultimately, have not been effective as many customers are desperate and continue to contact Plaintiff even after they have been advised that Plaintiff has nothing to do with Defendants' PPP business.

111.     In addition, Plaintiff had been forced to retain counsel to respond to formal inquiries from the State of Tennessee Division of Consumer Affairs and Commonwealth of Massachusetts Grand Jury Subpoena to explain that Plaintiff has no connection with the "Blue Acorn PPP" business under investigation by these agencies. *See* **Exhibit F**.

112.     Unfortunately, Defendants' pattern of failing to respond to customers and failure to maintain a monitored email address and/or dedicated customer service line for customer concerns and communications has only exacerbated the harm caused by consumer confusion.

113.     Additionally, Defendants' increased marketing and associated unlawful use and infringement of Plaintiff's IP has only increased, rendering Plaintiff's direct, case-by-case approach untenable and insufficient to address the harm caused by Defendants.

**PLAINTIFF'S CEASE & DESIST LETTERS**

114.     On April 8, 2021, Plaintiff sent a certified letter to Defendants, advising them of Plaintiff's rightful ownership of Plaintiff's IP and Defendants' unlawful use of the Infringing Mark and acorn logo that is identical to Plaintiff's Acorn Logo. A true and accurate copy of the April 8, 2021 Cease & Desist letter is attached as **Exhibit I** and is incorporated as if fully stated in this Verified Complaint. A true and accurate copy of consumer complaints submitted with the April 8, 2021 Cease & Desist Letter was filed separately as Proposed Sealed **Exhibit J** and is incorporated as if fully stated in this Verified Complaint.

115.    Defendants did not respond to the letter in any manner and failed to take any of the actions outlined in the April 8, 2021 Cease & Desist letter.

116.    Plaintiff and undersigned counsel also attempted on multiple occasions in April and May 2021 to communicate with Defendants through the contact information published by Defendants on their websites and marketing materials, but were unable to make any contact with them.

117.    Counsel for Plaintiff sent two letters to Defendant regarding consumer complaints and information received by Plaintiff related to Defendants' business, on May 12 and May 17, 2021. A true and accurate copy of the May 12, 2021 Letter to Defendant Fin Cap is attached as **Exhibit K**; a true and accurate copy of consumer complaints submitted with the May 12, 2021 Letter to Defendant Fin Cap is filed separately as Proposed Sealed **Exhibit L**; a true and accurate copy of the May 17, 2021 Letter to Defendant Fin Cap is attached as **Exhibit M**; and a true and accurate copy of consumer complaints submitted with the May 17, 2021 Letter to Defendant Fin Cap is filed separately as Proposed Sealed **Exhibit M**, all of which are incorporated as if fully stated in this Verified Complaint.

118.    However, hoping to avoid the necessity of legal action, Plaintiff sent a second Cease & Desist letter to Defendants on May 26, 2021, addressing their persisted failure to respond and failure to cease infringement activity and address the evident consumer confusion. A true and accurate copy of the second Cease & Desist letter is attached as **Exhibit O** and is incorporated as if fully stated in this Verified Complaint.

119.    In the second Cease & Desist letter, Plaintiff specifically requested that Defendants' take the following actions:

1) Cease, desist, and permanently refrain from all use of "blue acorn" or "blueacorn," or any confusingly similar name or mark, including but not limited to deactivating the "blueacorn.co" website and any other website associated with your business in which any form of the name "blue acorn" is used; change your company name(s) with the Wyoming and Arizona Secretaries of State; and inform your customers of the new name;

2) Destroy all promotional materials bearing the infringing "blue acorn" name, logo, images, acorn image, and trademarks;

3) Place a prominent disclaimer on the blueacorn.co website, and any other website associated with your business, explaining that the website is not affiliated with, sponsored by, or otherwise connected to Blue Acorn iCi;

4) If you have not already done so, set up a monitored email address and/or dedicated customer service line for customer inquiries; and

5) Remove any acorn images from your marketing materials, including but not limited to the acorn drawing that appears in the tab for blueacorn.co when the site is accessed through Google Chrome.

*See* **Exhibit O**.

120.    Defendants were provided until June 1, 2021 to confirm their compliance with these actions and cessation of infringing activity.

121.    As of June 1, 2021, Defendants failed to take all actions requested.

122.    While an attorney for one of the Defendants contacted the undersigned, Defendants were unwilling to cease infringing activity and offered no alternative solution to address the ongoing confusion and damages to Plaintiff.

123.    Defendants' continued and unlawful use of Plaintiff's IP after receiving notice through the first and second Cease & Desist letters of Plaintiff's rights in such IP, demonstrates that Defendants' conduct is willful and intentional and must be enjoined.

124.    In addition, in the weeks leading up to the filing of this action, consumer complaints have escalated to very serious claims of fraud.

125.    On May 5, 2021, two customers contacted Blue Acorn iCi (again erroneously believing it was the Defendants) and indicated that their PPP loans were rerouted to a bank account that was not their own.

126.    A similar posting on YouTube, referencing Defendants' YouTube video (the one using Plaintiff's Acorn Logo) identifies Defendants' business as a "SCAM" and cautions consumers: "*Don't give your info*!"



**Exhibit H**; https://www.youtube.com/watch?v=GwRfChlfDXE

127.    Additional complaints to the Better Business Bureau and other private and public governing bodies, among others, are contained in **Exhibit H** and incorporated as if fully stated in this Verified Complaint.

128.    Plaintiff has also received formal communications from state governing bodies, including the Commonwealth of Massachusetts and the State of Tennessee Division of Consumer Affairs seeking information apparently related to potential criminal activity, civil fraud and/or wrongful business practices relating to Defendants' PPP business. *See* **Exhibit F**.

129.     Once again, Plaintiff has been forced to retain legal counsel to communicate with these State agencies to explain that it has no connection whatsoever to Defendants' business.

130.     The increase in Defendants' nationwide advertising, together with the increasing frequency and serious nature of consumers' complaints, has forced Plaintiff to file this action to protect its business from further monetary and reputational loss and to enjoin Defendants' infringing use of Plaintiff's IP.

## COUNT I
### FEDERAL TRADEMARK INFRINGEMENT – LANHAM ACT
### 15 U.S.C. § 1114

131.     All prior allegations contained in this Verified Complaint are pled as if fully set forth in this paragraph.

132.     Plaintiff is the sole and true owner of Plaintiff's IP.

133.     Plaintiff has valid, enforceable, and protectable intellectual property rights in Plaintiff's IP and has a superior right in and to Plaintiff's IP.

134.     Plaintiff's IP, including all unregistered trademarks, are used by Plaintiff throughout the United States and are known by consumers throughout the United States.

135.     Plaintiff's IP is distinctive and is not descriptive.

136.     Defendants are using and promoting their business in similar channels of trade as Plaintiff and are using, publishing and promoting the Infringing Mark in connection with their business.

137.     Defendants' use and promotion of the Infringing Mark is confusingly similar to Plaintiff's IP and is, in fact, confusing and deceiving the consuming public.

138.     Defendants' use and promotion of an acorn logo that is identical to Plaintiff's Acorn Logo to promote its services is, in fact, confusing and deceiving the consuming public.

139.    Defendants have actual and constructive knowledge of Plaintiff's superior right of ownership and use in commerce of Plaintiff's IP prior to Defendants' use and promotion of the Infringing Mark and replica acorn logo.

140.    Defendants' use and promotion of the Infringing Mark and acorn logo that is identical to Plaintiff's Acorn Logo is unauthorized.

141.    Defendants' use and promotion in commerce of the Infringing Mark and acorn logo that is identical to Plaintiff's Acorn Logo is causing, and unless restrained, is highly likely to continue to cause, consumer confusion, mistake, and deception about the origin, source, sponsorship, or affiliation of Defendants' PPP services and is causing consumers to believe, contrary to fact, that Defendants' services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.

142.    Defendants' unauthorized use constitutes trademark infringement in violation of The Lanham Act, Pub. L. No. 79-489, 60 Stat. 427, 15 U.S.C. § 1114, *et. seq*.

143.    Defendants have continued their unauthorized use and promotion as alleged after receiving Plaintiff's Cease & Desist letters, further demonstrating their willful and intentional infringement.

144.    Defendants' acts are done willfully and with the deliberate intent to trade on the goodwill of Plaintiff's IP and cause confusion and deception in the marketplace.

145.    As such, Defendants' conduct and unauthorized use constitutes a knowing, intentional, and willful violation of Plaintiff's rights, rendering this an exceptional case under 15 U.S.C. § 1117(a).

146. As a result of Defendants' infringement, Plaintiff has suffered monetary damages and business loss, in addition to the continuing and substantial damage to the goodwill and reputation established by Plaintiff in its IP.

147. This continuing loss of goodwill and business reputation cannot be properly calculated and constitutes irreparable harm and an injury for which Plaintiff has no adequate remedy at law.

148. Plaintiff is suffering, and will continue to suffer, damage and irreparable harm unless this Court enjoins Defendants' conduct.

149. Accordingly, Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT II
### FEDERAL UNFAIR COMPETITION – LANHAM ACT
### 15 U.S.C. § 1125(a)

150. All prior allegations contained in this Verified Complaint are pled as if fully set forth in this paragraph.

151. Defendants' use and promotion in commerce of the Infringing Mark and acorn logo that is identical to Plaintiff's Acorn Logo is causing, and unless restrained, is highly likely to continue to cause, consumer confusion, mistake, and deception about the origin, source, sponsorship, or affiliation of Defendants' PPP services and is causing consumers to believe, contrary to fact, that Defendants' services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.

152. Defendants' unauthorized use in commerce of the Infringing Mark and acorn logo that is identical to Plaintiff's Acorn Logo constitutes use of a false designation of origin and misleading description and representation of fact.

153. Defendants' conduct is willful and is intended to cause, and is in fact causing, actual confusion, mistake, and deception as to the affiliation, connection, or association of Defendants with Plaintiff.

154. Defendants' conduct constitutes unfair competition in violation of The Lanham Act, Pub. L. No. 79-489, 60 Stat. 427, 15 U.S.C. § 1125(a), *et. seq.*

155. As a result of Defendants' unfair competition, Plaintiff has suffered monetary damages and business loss, in addition to the continuing and substantial damage to the goodwill and reputation established by Plaintiff in its IP.

156. This continuing loss of goodwill and business reputation cannot be properly calculated and constitutes irreparable harm and an injury for which Plaintiff has no adequate remedy at law.

157. Plaintiff is suffering, and will continue to suffer, damage and irreparable harm unless this Court enjoins Defendants' conduct.

158. Accordingly, Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT III
### Cybersquatting
### 15 U.S.C. § 1125(d)

159. All prior allegations contained in the Verified Complaint are pled as if fully set forth in this paragraph.

160. Plaintiff owns all rights in and to Plaintiff's IP and domain names "blueacorn.com" and "blueacornici.com," which were strong and distinctive as of the date Defendants registered the domain names "blueacorn.co" and "getblueacorn.com" (collectively "<u>Domain Names</u>").

161. Upon information and belief, Defendants registered and used the Domain Names, which are confusingly similar to Plaintiff's IP and domain names "blueacorn.com" and "blueacornici.com."

162. Defendants registered and used the Domain Names with an intent to profit from their confusing similarity to Plaintiff's IP and domain names "blueacorn.com" and "blueacornici.com."

163. Upon information and belief, Defendants registered the Domain Names:

    i. despite knowing Defendants had no rights in any "blue acorn" name and was not known by any name that was referenced or reflected in the Domain Names;

    ii. without having any bona fide, non-infringing, commercial use or fair non-commercial use of the Domain Names; and

    iii. with the intent to divert consumers looking for Plaintiff's services online to Defendants' website by exploiting the confusing similarity of the Domain Names and Plaintiff's IP for Defendants' commercial gain.

164. Defendants' registration and use of the Domain Names to promote its PPP business constitutes trademark infringement under 15 U.S.C. § 1125(a).

165. Defendants' conduct is willful and is intended to cause, and is in fact causing, actual confusion, mistake, and deception as to the affiliation, connection, or association of Defendants with Plaintiff.

166. Defendants' conduct constitutes cybersquatting in violation of 15 U.S.C. § 1125(d).

167. As a result of Defendants' cybersquatting, Plaintiff has suffered monetary damages and business loss, in addition to the continuing and substantial damage to the goodwill and reputation established by Plaintiff in its IP.

168. This continuing loss of goodwill and business reputation cannot be properly calculated and constitutes irreparable harm and an injury for which Plaintiff has no adequate remedy at law.

169. Plaintiff is suffering, and will continue to suffer, damage and irreparable harm unless this Court enjoins Defendants' conduct.

170. Accordingly, Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1125(d), together with prejudgment and post-judgment interest.

## COUNT IV
### FEDERAL COPYRIGHT INFRINGEMENT
### 15 U.S.C. § 101

171. All prior allegations contained in this Verified Complaint are pled as if fully set forth in this paragraph.

172. The Acorn Logo is an original visual work of art containing copyrightable subject matter for which copyright protection exists under the United States Copyright Act of 1976, as amended, 17 U.S.C. § 101, *et seq.*

173.     Plaintiff has filed a copyright application with the USCO, and received a first refusal, and is filing a Request for Reconsideration and a Notice of Litigation (along with a copy of this Verified Complaint) with the USCO contemporaneously with this Verified Complaint, thereby providing a right to sue under 17 U.S. §411(a). *See* **Exhibit C**.

174.     Plaintiff is the sole and true copyright owner of the Acorn Logo.

175.     Plaintiff (or its Predecessors) have created, published, promoted, and used the Acorn Logo in connection with its business since 2009.

176.     The value of the Acorn Logo to Plaintiff is substantial because, *inter alia*: 1) the quality of Plaintiff's business, brand, and services are identified by and through the Acorn Logo; 2) the Acorn Logo has been used in commerce for over a decade in connection with its services; 3) the Acorn Logo identifies the goodwill and business reputation of Plaintiff and its services; and 3) the Acorn Logo is distinctive in shape, design and color.

177.     Defendants are using, reproducing, and publishing an identical copy of the Acorn Logo in their promotional materials.

178.     Defendants' blue acorn image is indistinguishable from the Acorn Logo.

179.     Defendants' use, publication, and reproduction of an identical image as the Acorn Logo in their marketing and advertisements is unauthorized.

180.     Defendants have never accounted to Plaintiff or otherwise paid Plaintiff for use of the Acorn Logo.

181.     Plaintiff has knowledge that Defendants copied the Acorn Logo because the blue acorn image used by Defendants is identical to the Acorn Logo and cannot possibly be explained other than as a result of copying.

182.    Defendants have actual and constructive knowledge of Plaintiff's superior right of ownership and use in commerce of the Acorn Logo before they copied the Acorn Logo.

183.    Defendants' unauthorized use of a replica Acorn Logo constitutes direct infringement of Plaintiff's exclusive rights in the Acorn Logo in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

184.    Defendants have continued their unauthorized use and reproduction of the Acorn Logo as alleged after receiving Plaintiff's Cease & Desist letter, further demonstrating their willful and intentional infringement.

185.    Defendants' acts are done willfully and with the deliberate intent to trade on the goodwill and value of Plaintiff's Acorn Logo.

186.    On information and belief, Defendants' willful and intentional copyright infringement has enabled Defendants to obtain profit illegally from their use and reproduction.

187.    In addition, Defendants' use, publication, and promotion of a replica Acorn Logo is causing consumers to be confused about the origin, source, sponsorship, or affiliation of Defendants' PPP services and is causing consumers to believe, contrary to fact, that Defendants' services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.

188.    As a result of Defendants' copyright infringement, Plaintiff has suffered monetary damages and business loss, in addition to the continuing and substantial damage to the goodwill and reputation established by Plaintiff.

189.    This continuing loss of goodwill and business reputation cannot be properly calculated and constitutes irreparable harm and an injury for which Plaintiff has no adequate remedy at law.

190.    Plaintiff is suffering, and will continue to suffer, damage and irreparable harm unless this Court enjoins Defendants' conduct.

191.    Accordingly, Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, statutory damages, reasonable attorneys' fees, and costs of the action under 17 U.S.C. § 101, *et. seq.,* 17 U.S.C. § 501, 17 U.S.C. § 505, 17 U.S.C. § 504, together with prejudgment and post-judgment interest.

## COUNT V
### TRADEMARK INFRINGEMENT
### N.C. GEN. STAT. § 80-11 AND COMMON LAW

192.    All prior allegations contained in the Verified Complaint are pled as if fully set forth in this paragraph.

193.    Plaintiff is the sole and true owner of Plaintiff's IP.

194.    Plaintiff has valid, enforceable, and protectable intellectual property rights in Plaintiff's IP and has a superior right in and to the IP.

195.    Plaintiff has used, promoted, and published Plaintiff's IP in North Carolina and has customers throughout North Carolina.

196.    Plaintiff's IP is distinctive and is not descriptive.

197.    Defendants are using and promoting their business in similar channels of trade as Plaintiff, including, but not limited to, the same channels of trade located in the state of North Carolina.

198.    Defendants have and continue to use the Infringing Mark in the state of North Carolina.

199.    Defendants' use and promotion of the Infringing Mark is confusingly similar to Plaintiff's IP and is, in fact, confusing and deceiving the consuming public, including but not limited to, members of the consuming public located in the state of North Carolina.

200.    Defendants' use and promotion of an acorn logo that is identical to Plaintiff's Acorn Logo to promote its services is, in fact, confusing and deceiving the consuming public, including but not limited to, members of the consuming public located in the state of North Carolina.

201.    Defendants have actual and constructive knowledge of Plaintiff's superior right of ownership and use in commerce of Plaintiff's IP prior to Defendants' use and promotion of the Infringing Mark and replica acorn logo.

202.    Defendants' use and promotion of the Infringing Mark and acorn logo that is identical to Plaintiff's Acorn Logo is unauthorized.

203.    Defendants' use and promotion in commerce of the Infringing Mark and acorn logo that is identical to Plaintiff's Acorn Logo is causing, and unless restrained, is highly likely to continue to cause, consumer confusion, mistake, and deception about the origin, source, sponsorship, or affiliation of Defendants' PPP services and is causing consumers to believe, contrary to fact, that Defendants' services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.

204.    Defendants' unauthorized use constitutes trademark infringement in violation of N.C. Gen. Stat. § 80-11 *et. seq*. and the common law of the State of North Carolina.

205.    Defendants have continued their unauthorized use and promotion after receiving Plaintiff's Cease & Desist letter, further demonstrating their willful and intentional infringement.

206.    Defendants' acts are done willfully and with the deliberate intent to trade on the goodwill of Plaintiff's IP and cause confusion and deception in the marketplace.

207.    As such, Defendants' conduct and unauthorized use constitutes a knowing, intentional, and willful violation of Plaintiff's rights.

208.    As a result of Defendants' infringement, Plaintiff has suffered monetary damages and business loss, in addition to the continuing and substantial damage to the goodwill and reputation established by Plaintiff in its IP.

209.    This continuing loss of goodwill and business reputation cannot be properly calculated and constitutes irreparable harm and an injury for which Plaintiff has no adequate remedy at law.

210.    Plaintiff is suffering, and will continue to suffer, damage and irreparable harm unless this Court enjoins Defendants' conduct.

211.    Accordingly, Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, enhanced damages and profits, reasonable attorneys' fees, and costs of the action as provided by N.C. Gen. Stat. § 80-12, *et. seq.*, together with prejudgment and post-judgment interest.

### COUNT VI
**VIOLATION OF THE NORTH CAROLINA UNFAIR & DECEPTIVE TRADE PRACTICES ACT, N.C. GEN. STAT. § 75-1.1**

212.    All prior allegations contained in the Verified Complaint are pled as if fully set forth in this paragraph.

213.    The actions and conduct of Defendants constitute unfair and deceptive acts or practices, in or affecting commerce, in violation of N.C. Gen. Stat. § 75-1.1.

214.    Plaintiff's claims for unfair and deceptive trade practices against Defendants include, but are not limited to, Defendants' use and promotion in commerce of the confusingly similar Infringing Mark and acorn logo that is identical to Plaintiff's Acorn Logo in violation of

Plaintiff's intellectual property rights in Plaintiff's IP; Defendants' continued use and promotion of the confusingly similar Infringing Mark and acorn logo that is identical to Plaintiff's Acorn Logo following receipt of Plaintiff's Cease & Desist letter; and Defendants' knowing, intentional, and willful violation of Plaintiff's rights.

215.    Defendants' actions constitute unfair and deceptive acts and practices and unfair methods of competition.

216.    As a direct, natural, and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, treble damages, reasonable attorneys' fees, and costs of the action as provided by N.C. Gen. Stat. § 75-16 and § 75-16.1, together with prejudgment and post-judgment interest.

WHEREFORE, Plaintiff BERINGER COMMERCE, INC. d/b/a BLUE ACORN iCi respectfully requests that the Court grant the following relief against Defendants BLUEACORN.CO, FIN CAP, INC., BLUE ACORN PPP, LLC, BLUE OAK FOREST, LLC, MICHAEL S. COTA, JAMES FLORES, STEPHANIE HOCKRIDGE REIS, and NATHAN REIS, jointly and severally:

1.      Judgment in favor of Plaintiff, plus interest as allowed by law;

2.      An award of all monetary damages allowed under state and federal law;

3.      Injunctive or other equitable relief as allowed under 15 U.S.C. § 1116, or as otherwise allowed by state or federal law;

4.      Disgorgement of Defendants' profits as allowed by state or federal law;

5.      That the costs of this action, including Plaintiff's reasonable attorneys' fees, be taxed by the Court against Defendants pursuant to 15 U.S.C. § 1117, and other lawful authority;

6. That any damages awarded to Plaintiff's be trebled pursuant to the provisions of 15 U.S.C. §§ 1114-1119;

7. Monetary relief under 17 U.S.C. § 101, *et. seq.,* 17 U.S.C. § 501, 17 U.S.C. § 505, and 17 U.S.C. § 504.

8. That Plaintiff be awarded relief as provided by N.C. Gen. Stat. § 75-1, et. seq;

9. That any damages awarded to Plaintiff be trebled pursuant to the provisions of N.C. Gen. Stat. § 75-16;

10. An award of punitive damages;

11. Such other relief as the Court deems just and proper; and

12. A trial by jury.

RESPECTFULLY SUBMITTED this 10th day of June, 2021.

*/s/ **Beth A. Stanfield***
Beth A. Stanfield (N.C. State Bar No. 36296)
Thomas Babel (N.C. State Bar No. 35004)
Laura K. Greene (N.C. State Bar No. 47771)
FORREST FIRM, P.C.
105 Grace Street, Suite 101
Wilmington, NC 28401
T/F: (336) 275-6344
Beth.stanfield@forrestfirm.com
thomas.babel@forrestfirm.com
katie.greene@forrestfirm.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Civil Action No. ___5:21-cv-251___

| | |
|---|---|
| BERINGER COMMERCE, INC. d/b/a BLUE ACORN iCi,<br><br>Plaintiff,<br><br>v.<br><br>FIN CAP, INC. d/b/a "BLUEACORN.CO," BLUE ACORN PPP, LLC, BLUE OAK FOREST, LLC, MICHAEL S. COTA, JAMES FLORES, STEPHANIE HOCKRIDGE REIS, and NATHAN REIS,<br><br>Defendants. | **VERIFICATION** |

I, Judy Geaslen, Chief Financial Officer of BERINGER COMMERCE, INC. d/b/a BLUE ACORN iCi, deposes and says that I have read the forgoing Complaint, and the same is true to my knowledge, expect for those matters and things stated upon information and belief, and as to those matters and things, I believe them to be true.

This the ___9___ day of June, 2021.

_____
Judy Geaslen
Chief Financial Officer
BERINGER COMMERCE, INC. d/b/a
BLUE ACORN iCi

Sworn to and subscribed before me

This the ___9___ day of June, 2021.

_____
Notary Public

My Commission Expires: 12/10/2025

(SEAL)

GRAZIELLA LA ROSA
Notary Public
Wake Co., North Carolina
My Commission Expires: 12/10/2025